UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA )
)                 02 CR 801-2
vs. )                 Judge George W. Lindberg
)
MARIA LOURDES BANEA )



**FILED**
AUG 2 1 2002
JUDGE GEORGE W. LINDBERG

**DOCKETED**
AUG 2 2 2002

## PLEA AGREEMENT

This Plea Agreement between the United States Attorney for the Northern District of Illinois,

PATRICK J. FITZGERALD, and the defendant, MARIA LOURDES BANEA, and her attorney,

KEVIN P. BOLGER, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure.

This Plea Agreement is entirely voluntary and represents the entire agreement between the

United States Attorney and defendant regarding defendant's criminal liability in case 02 CR 801.

This Plea Agreement concerns criminal liability only, and nothing herein shall limit or in any way

waive or release any administrative or judicial civil claim, demand or cause of action, whatsoever,

of the United States or its agencies. Moreover, this Agreement is limited to the United States

Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state or local

prosecuting, administrative or regulatory authorities except as expressly set forth in this Agreement.

By this Plea Agreement, PATRICK J. FITZGERALD, United States Attorney for the

Northern District of Illinois, and the defendant, MARIA LOURDES BANEA and her attorney,

KEVIN P. BOLGER, have agreed upon the following:

1. Defendant acknowledges that she has been charged in the information in this case

with conspiring with PAUL S. SYHONGPAN to commit offenses against the United States, namely

(1) theft of mail and the contents thereof, in violation of Title 18, United States Code, Section 1709

1

and (2) use of unauthorized access devices, in violation of Title 18, United States Code, Sections 1029(a)(2) and 2.

2.     Defendant has read the charge against her contained in the information and that charge has been fully explained to her by her attorney.

3.     Defendant fully understands the nature and elements of the crime with which she has been charged.

4.     Defendant will enter a voluntary plea of guilty to the information in this case.

5.     Defendant will plead guilty because she is in fact guilty of the charge contained in the information. In pleading guilty, defendant admits the following facts and that those facts establish her guilt beyond a reasonable doubt:

Defendant admits that, as charged in the information, from in or about November 1998 to in or about May 2001, at Arlington Heights, Palatine, Rolling Meadows, and elsewhere in the Northern District of Illinois, Eastern Division, defendant combined, conspired, and agreed with co-defendant PAUL S. SYHONGPAN to commit offenses against the United States, namely: (a) to embezzle first-class letters that contained credit cards and had been mailed by credit card companies to individuals in Arlington Heights, Palatine, and elsewhere, which letters were entrusted to defendants SYHONGPAN and BANEA and came into their possession, intended to be conveyed by mail, in violation of Title 18, United States Code, Section 1709; and (b) to use one or more unauthorized access devices, knowingly and with intent to defraud, during any one-year period, and to obtain by such conduct items of value aggregating $1,000 or more during that period, in violation of Title 18, United States Code, Sections 1029(a)(2) and 2.

2

Defendant admits that she worked as a regular mail clerk at the Palatine Processing and Distribution Center and had access to mail that was to be forwarded from that location to other Post Office branches. Defendant's husband, Paul S. Syhongpan, worked as a regular mail clerk at the Arlington Heights Post Office Branch and had access to mail that was "on hold" at that branch. Beginning in approximately November 1998 and continuing until May 2001, defendant stole credit cards from the mail, many of which were to be forwarded from the Palatine Processing and Distribution Center to a different Post Office branch. During the time of the conspiracy, defendant's husband also stole credit cards from the mail, many of which were on hold at the Arlington Heights Branch. Defendant and her husband stole in excess of 15 credit cards during this time period. Defendant's husband was able to activate at least one of the stolen credit cards because he copied the social security number of the individual whose card he had stolen from the mail when that individual presented identification to pick up the mail he had placed on hold while on vacation.

Defendant and her husband used these stolen credit cards to purchase items for themselves. Defendant and her husband used the stolen credit cards at stores including Target, Jewel, Dominick's, ABT, and Marshall Field's. Defendant forged the signature of the name appearing on the credit card in order to make fraudulent purchases on the stolen credit cards. Defendant and her husband used the cards for a short period of time, often just a few days, and then discarded them. During the time period of the conspiracy, defendant and her husband made purchases of numerous items, including major home appliances, electronic and stereo equipment, video games, clothes, gift certificates and gift cards, totaling at least $70,094.

In furtherance of the conspiracy, defendant and her husband committed a number of overt acts in the Northern District of Illinois and elsewhere. On or about April 11, 2000, defendant's

3

husband, Syhongpan, stole from the mail a First Class letter addressed to Individual A, an Arlington Heights resident, which contained a VISA credit card issued by First USA Bank. From on or about April 11, 2000, until on or about April 25, 2000, defendant and her husband used this stolen Visa credit card in locations within the Northern District of Illinois to buy items of value for themselves, including gift cards and gift certificates, clothing, and cologne, totaling approximately $15,095.19.

On or about August 20, 2000, defendant stole from the mail a First Class letter addressed to Individual B, a Mount Prospect resident, containing a VISA credit card issued by First USA Bank. From on or about August 20, 2000, through on or about August 24, 2000, defendant and her husband used the stolen Visa credit card in locations within the Northern District of Illinois to buy items of value for themselves, including a Weber grill and gift certificates, totaling $3,090.20.

On or about April 1, 2001, defendant's husband stole from the mail a First Class letter addressed to Individual C, an Arlington Heights, resident containing a MASTERCARD credit card issued by Sears National Bank. From on or about April 1, 2001, through on or about April 6, 2001, defendant and her husband used the stolen MASTERCARD credit card in locations within the Northern District of Illinois to buy items of value for themselves, including a gas stove, a dishwasher, a microwave, a SONY PLAYSTATION 2, gift cards and gift certificates, totaling approximately $11,277.80.

6.      For purposes of applying the guidelines promulgated by the United States Sentencing Commission pursuant to Title 28, United States Code, Section 994, effective November 1, 2000, the parties agree on the following points:

(a)  Pursuant to Guideline §2B1.1, the base offense level for the offense is level 4.

4

(b)  Pursuant to Guideline §2B1.1(b)(1)(D), defendant's offense level is increased 8 levels because the loss of the offense of conviction exceeded $70,000 but was less than $120,000.

(c)  Pursuant to Guideline §2B1.1(b)(4)(A), defendant's offense level is increased 2 levels because the offense of conviction involved more than minimal planning.

(d)  Pursuant to Guideline § 3B1.3, defendant's offense level is increased 2 levels because she abused a position of public trust in a manner that significantly facilitated the commission of the offense.

(e)  Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for her criminal conduct.  If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for her actions, within the meaning of Guideline §3E1.1, a two-level reduction in the offense level will be appropriate.

(f)  Defendant has timely notified the government of her intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the court to allocate its resources effectively, within the meaning of Guideline 3E1.1(b) and an additional one-point reduction in the offense level is therefore appropriate, provided the court determines the offense level to be 16 or greater prior to the operation of Guideline 3E1.1(a).

(g)  Based on information presently available to the government, defendant's criminal history points equal zero and her criminal history category is I.

(h)  Defendant and her attorney and the government acknowledge that the above calculations are preliminary in nature and based on facts known to the government as of the time of this Agreement.  The defendant understands that the Probation Department will conduct its own

investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final Sentencing Guidelines calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations.

7.	Errors in calculations or interpretation of any of the guidelines may be corrected by either party prior to sentencing. The parties may correct these errors or misinterpretations either by stipulation or by a statement to the probation office and/or Court setting forth the disagreement as to the correct guidelines and their application. The validity of this Agreement will not be affected by such corrections, and the defendant shall not have a right to withdraw her plea on the basis of such corrections.

8.	Defendant understands that the charge to which she is pleading guilty carries a maximum penalty of five years imprisonment, a maximum fine of $250,000, as well as any restitution which the Court may order. Defendant further understands that this charge also carries a term of supervised release of not more than three years, which the Court may specify.

9.	Defendant agrees to abandon to the United States the entirety of her interest in any and all property seized and retained by the United States Postal Inspection Service on or about May 11, 2001. Defendant acknowledges that this property constitutes evidence related to the offense of conviction.

10.	The defendant understands that in accord with federal law, Title 18, United States Code, Section 3013, upon entry of judgment of conviction, the defendant will be assessed $100 on the count to which she has pled guilty, in addition to any other penalty imposed. The defendant agrees to pay the special assessment of $100 at the time of sentencing with cash or a money order made payable to the Clerk of the U. S. District Court.

11.     Defendant understands that by pleading guilty she surrenders certain rights, including the following:

(a) If defendant persisted in a plea of not guilty to the charge against her, she would have the right to a public and speedy trial. The trial could be either a jury trial or a trial by the judge sitting without a jury. The defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, the defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

(b) If the trial is a jury trial, the jury would be composed of twelve laypersons selected at random. Defendant and her attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual bias or other disqualification is shown, or without cause by exercising so-called peremptory challenges. The jury would have to agree unanimously before it could return a verdict of either guilty or not guilty. The jury would be instructed that defendant is presumed innocent, and that it could not convict her unless, after hearing all the evidence, it was persuaded of defendant's guilt beyond a reasonable doubt.

(c) If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, whether or not the judge was persuaded of defendant's guilt beyond a reasonable doubt.

(d) At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and her attorney would be able to cross-examine them. In turn, defendant could present witnesses and other evidence in her own behalf. If the witnesses for defendant would not appear voluntarily, she could require their attendance through the subpoena power of the court.

7

(e) At a trial, defendant would have a privilege against self-incrimination so that she could decline to testify, and no inference of guilt could be drawn from her refusal to testify. If defendant desired to do so, she could testify in her own behalf.

(f) Defendant understands that she has a right to have the charge prosecuted by an indictment returned by a concurrence of twelve or more members of a legally constituted grand jury consisting of not less than sixteen and not more than twenty-three members. By signing this Agreement, defendant knowingly waives her right to be prosecuted by indictment and to assert at trial or on appeal any defects or errors arising from the information, the information process, or the fact that she has been prosecuted by way of information.

12. Defendant understands that by pleading guilty she is waiving all the rights set forth in the prior paragraph. Defendant's attorney has explained those rights to her, and the consequences of her waiver of those rights. Defendant further understands she is waiving all appellate issues that might have been available if she had exercised her right to trial.

13. Defendant is also aware that Title 18, United States Code, Section 3742 affords a defendant the right to appeal the sentence imposed. Acknowledging this, the defendant knowingly waives the right to appeal any sentence within the maximum provided in the statute of conviction (or the manner in which that sentence was determined), in exchange for the concessions made by the United States in this Plea Agreement. The defendant also waives her right to challenge her sentence or the manner in which it was determined in any collateral attack, including but not limited to a motion brought under Title 28, United States Code, Section 2255. The waiver in this paragraph does not apply to a claim of involuntariness, or ineffective assistance of counsel, which relates directly to this waiver or to its negotiation.

14.     The defendant understands that she has a right to conflict-free counsel. The defendant understands that this means that she has the right to have a lawyer represent her who is loyal to her and has no conflicts of interest with any of the lawyer's other clients. The defendant has chosen Kevin Bolger as her lawyer in this case. The defendant is aware that Mr. Bolger also represents her husband and co-defendant, Paul S. Syhongpan, in this case. The defendant understands that Mr. Bolger's joint representation of Paul S. Syhongpan and her creates either a potential or an actual conflict of interest. The defendant has discussed this conflict-of-interest issue with Mr. Bolger. The defendant is satisfied with these discussions and does not want to discuss this issue with another attorney. The defendant hereby waives her right to conflict-free counsel in this case. In addition to the appellate waiver in the prior paragraph, the defendant also hereby waives her right to argue in any appeal, or in any motion for postconviction relief, that her constitutional right to effective assistance of counsel was violated because Mr. Bolger had a potential or actual conflict of interest, or to make any related argument based on Mr. Bolger's potential or actual conflict of interest.

15.     Defendant understands that the Information and this Plea Agreement are matters of public record and may be disclosed to any party.

16.     Defendant understands that the United States Attorney's Office will fully apprise the District Court and the United States Probation Office of the nature, scope and extent of defendant's conduct regarding the charges against her, and related matters, including all matters in aggravation and mitigation relevant to the issue of sentencing.

17.     At sentencing, the government will recommend that the Court impose a sentence at the low-end of the applicable guideline range.

18.     Regarding restitution, the parties acknowledge that the amount of restitution owed by the defendant is $70,094, and that pursuant to Title 18, United States Code, Section 3663A the

Court must order defendant to make restitution in this amount, minus any credit for funds repaid prior to sentencing. Specifically, the parties acknowledge that the restitution owed by defendant is as follows: (1) $37,675.39 to First USA Bank ($15,095.19 from card issued to Individual A; $3090.20 from card issued to Individual B; $1502.44 from card issued to Individual D; $2468.85 from card issued to Individual E; $2161.60 from card issued to Individual F; $1119.16 from card issued to Individual G; $1088.83 from card issued to Individual H; $755.82 from card issued to Individual J; $4886.12 from card issued to Individual K; $5507.18 from card issued to Individual L); (2) $11,277.80 to Sears National Bank; (3) $5505.18 to Bank of America; (4) $4097.48 to MBNA Bank; (5) $2192.74 to Chase Manhattan Bank; (6) $3998.32 to Monogram Credit Card Bank; (7) $3405.11 to Firstar Bank; (8) $442.00 to Wachovia Bank; and (9) $1499.98 to Retailers National Bank.

19.     It is understood by the parties that the sentencing judge is neither a party to nor bound by this Agreement and, subject to the limitations of the Sentencing Guidelines, may impose the maximum penalties as set forth in paragraph 8 above. The defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, the defendant will have no right to withdraw her guilty plea.

20.     Defendant acknowledges that her employment with the United States Postal Service has been terminated and agrees never to re-apply for employment with the United States Postal Service. Defendant further agrees to waive all rights, claims and grievances associated with her employment with and termination by the United States Postal Service.

21.     Defendant understands that her compliance with each part of this Plea Agreement extends throughout and beyond the period of her sentence, and failure to abide by any term of the Plea Agreement is a violation of the Agreement. She further understands that in the event she

10

violates this Agreement, the government, at its option, may move to vacate the Plea Agreement, rendering it null and void, and thereafter prosecute the defendant not subject to any of the limits set forth in this Agreement, or to resentence the defendant.

22.      Defendant and her attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

23.      Defendant agrees this Plea Agreement shall be filed and become a part of the record in this case.

24.      Should the judge refuse to accept the defendant's plea of guilty, this Agreement shall become null and void and neither party will be bound thereto.

25.      Defendant acknowledges that she has read this Agreement and carefully reviewed each provision with her attorney. Defendant further acknowledges that she understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: __8/21/02__

PATRICK J. FITZGERALD
United States Attorney

MARIA LOURDES BANEA
Defendant

CARRIE E. HAMILTON
Assistant United States Attorney

KEVIN P. BOLGER
Attorney for Defendant

11